UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

SELF INITIATED LIVING OPTIONS, INC.,
a/k/a SUFFOLK INDEPENDENT LIVING
ORGANIZATION, a nonprofit organization,
RAYMOND HAREWOOD, an individual,
DAVID RODRIGUEZ, an individual, and GINA
BARBARA, an individual, on behalf of
themselves and all others similarly situated,

No.    19-cv-3564

**COMPLAINT**

                            Plaintiffs,

-against-

METROPOLITAN TRANSPORTATION
AUTHORITY, a public benefit corporation,
PATRICK J. FOYE, in his official capacity as
chairman and chief executive officer of the
Metropolitan Transportation Authority, LONG
ISLAND RAIL ROAD COMPANY, a public
benefit corporation, and PHILLIP ENG, in his
official capacity as president of the Long Island
Rail Road Company,

                            Defendants.

## INTRODUCTION

1.      This class-action lawsuit challenges the Metropolitan Transportation Authority

("MTA") and Long Island Rail Road Company ("LIRR")'s discriminatory practice of preventing

people with mobility disabilities from having meaningful access to and use of the commuter rail

service established and operated by these entities.  The MTA and LIRR have deliberately chosen

to ignore decades-old law by failing to install elevators, or otherwise make necessary

accessibility upgrades required by the Americans with Disabilities Act ("ADA"), when

renovating certain train stations.

2.      In 2016, the MTA and LIRR undertook an $11 million project to replace

escalators on the Babylon line of the LIRR, which covers a span of about 40 miles from its

terminus in Babylon, New York, at the southern part of western Suffolk County, to Penn Station

in Manhattan.  However, in making these extensive renovations at the Amityville, Copiague, and

Lindenhurst stations, the MTA and LIRR failed to install elevators to provide people with

mobility disabilities with access to the station platforms.

3.      The lack of elevator access at the Amityville, Copiague, and Lindenhurst stations

is particularly detrimental to Plaintiffs, and others similarly situated, because it effectively

prevents them from accessing Defendants' commuter rail service across a span of approximately

eight miles of track on the Babylon line (between the accessible Babylon and Massapequa

stations).

4.      The MTA and LIRR's failure to install elevators violates the Americans with

Disabilities Act and its implementing regulations, which require that "[w]hen a public entity

alters an existing [station] or part [thereof] . . . in a way that affects or could affect" its usability,

it must ensure that the altered portion is "*readily accessible to and usable by individuals with

disabilities, including individuals who use wheelchairs*" "to the maximum extent feasible."[1]

5.      In addition to making these extensive renovations, the MTA and LIRR failed to

make waiting room restrooms wheelchair-accessible, along with other amenities along the path

of travel to the train platforms.  In so doing, the MTA and LIRR violated the Americans with

Disabilities Act and its implementing regulations, which require that "*to the maximum extent

feasible*, the path of travel to the altered area and the bathrooms, telephones, and drinking

fountains serving the altered area [must be made] *readily accessible to and usable by individuals

with disabilities, including individuals who use wheelchairs*."[2]

---

[1] 49 C.F.R. § 37.43(a)(1) (emphasis added); *see also* 42 U.S.C. § 12162(e)(2)(B)(i).

[2] 49 C.F.R. § 37.43(a)(2) (emphasis added); *see also* 42 U.S.C. § 12162(e)(2)(B)(ii).

6.      As Congress observed when enacting the ADA, the law is "geared to the future—the goal being that, over time, access will be the rule rather than the exception."[3]

7.      Scheduled construction projects present a cost-effective opportunity to increase the accessibility of the LIRR to persons with disabilities so that everyone, disabled and nondisabled alike, have equal and meaningful access to LIRR stations.

8.      Plaintiffs bring this suit to enforce the clear dictates of the ADA which require full and equal access to disabled persons when stations undergo renovations such as those described herein.

## JURISDICTION

9.      This is an action for injunctive relief brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*

10.     Under 28 U.S.C. §§ 1331 and 1343, this Court has jurisdiction over claims arising under the ADA and Section 504.

## VENUE

11.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because Defendants are located within this judicial district and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## PLAINTIFFS

12.     Plaintiff Self Initiated Living Options, Inc., a/k/a Suffolk Independent Living Organization ("SILO"), has been providing programs and services to people with disabilities in

---

[3] H. Comm. on Judiciary, Americans with Disabilities Act of 1990, H. Rep. No. 101-485, at 63 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 486.

Suffolk County since 1985.  SILO is a 501(c)(3) not-for-profit, consumer-controlled, non-residential, civil rights, mentoring, and educational organization.

13.     Approximately 87 percent of SILO board members and approximately 35 percent of SILO staff are persons with disabilities.  SILO participants and constituents include individuals with mobility disabilities who would use the Amityville, Copiague, and Lindenhurst stations if they were accessible to persons with mobility disabilities.

14.     SILO has long advocated for improving accessibility on the LIRR, and must use its resources to advise its employees and participants who must contend with the LIRR's inaccessible stations, including the ones located in Amityville, Copiague, and Lindenhurst.

15.     Plaintiff Raymond Harewood is a resident of North Amityville, New York.  He has vertebrae and nervous system issues which substantially limit Mr. Harewood's ability to stand and walk.  He relies on a walking stick, a rollator, and/or a scooter for mobility.  He is a qualified individual with a disability within the meaning of all applicable statutes.  Mr. Harewood is a participant in SILO.  He would use the LIRR's Babylon line, and specifically the Amityville station near his home, if it were accessible to him.

16.     Plaintiff David Rodriguez is a resident of Lindenhurst, New York.  He has a spinal cord injury and is paralyzed from the chest down.  He relies on a motorized wheelchair for mobility.  He is a qualified individual with a disability within the meaning of all applicable statutes.  Mr. Rodriguez is also a participant in SILO and uses the LIRR Babylon line.  Mr. Rodriguez would use the Lindenhurst station near his home if it were accessible to him.

17.     Plaintiff Gina Barbara is a resident of Wantagh, New York.  Ms. Barbara has cerebral palsy and is substantially limited in walking.  She relies on a motorized wheelchair for mobility.  Ms. Barbara is a qualified individual with a disability within the meaning of all

4

applicable statutes.  Ms. Barbara is a participant in SILO.  Ms. Barbara would use the LIRR's Babylon line, including the Amityville, Copiague, and Lindenhurst stations, if these were made accessible to her.

## **DEFENDANTS**

18.     Defendant Metropolitan Transportation Authority ("MTA") is a public benefit corporation chartered by the New York State Legislature in 1968 under the Metropolitan Transportation Authority Act.  New York Public Authorities Law § 1260 *et seq.*

19.     The MTA is the largest transportation network in North America, serving a population of 15.3 million people in the 5000-square-mile area covering New York City, Long Island, southeastern New York State, and Connecticut.

20.     The MTA's 2019 operating budget is $16.7 billion.

21.     Defendant Patrick J. Foye is the Chairman and Chief Executive Officer of the MTA and is sued in his official capacity.

22.     Defendant Long Island Rail Road Company ("LIRR") is a public benefit corporation pursuant to New York Public Authorities Law § 1260 *et seq.*

23.     The LIRR is a wholly-owned subsidiary of the MTA.

24.     The LIRR is comprised of over 700 miles of track on 11 different branches stretching from Manhattan to Montauk at the eastern tip of Long Island, a distance of about 120 miles.  The LIRR operates 124 stations in Nassau, Suffolk, Queens, Kings and New York Counties.

25.     The LIRR's 2019 operating budget is $1.69 billion.

26.     Defendant Phillip Eng is the President of LIRR and is sued in his official capacity.

5

## FACTUAL ALLEGATIONS

**A.    Failure to Construct Elevators During Replacement of Escalators at Amityville, Copiague, and Lindenhurst LIRR Stations**

27.    The Babylon line of the LIRR serves over 68,000 riders each day.

28.    The Amityville, Copiague, and Lindenhurst stations are located at the eastern end of the Babylon line in Suffolk County.

29.    The three stations are nearly identical:  Riders ascend a staircase or escalator, the bases of which are situated at street level, rising to a single, elevated platform with east- and westbound trains running on opposite sides of the platform.

30.    In 2013, the year after a woman was killed in an accident on the Lindenhurst station's escalator, the LIRR spent approximately $5 million to upgrade and replace parts of the escalators at several stations, including Amityville, Copiague, and Lindenhurst.

31.    In the period from 2015 to 2016, the MTA and LIRR replaced the escalators at six stations, including Amityville, Copiague, and Lindenhurst.

32.    The MTA and LIRR replaced the escalators at the Amityville, Copiague, and Lindenhurst stations so that riders who do not use wheelchairs or other assistive devices could travel more safely and reliably between the street level and the elevated station platforms.

33.    While the MTA and LIRR made the foregoing renovations, they failed to install elevators at the Amityville, Copiague, and Lindenhurst stations to make them accessible to riders with mobility disabilities.

34.    Moreover, the MTA and LIRR also failed to make other necessary alterations to these stations, including making the public bathrooms in the waiting rooms wheelchair-accessible.

35.    The installation of elevators at the Amityville, Copiague, and Lindenhurst stations would have been feasible.

36.    The necessary accessibility alterations to the public bathrooms located at the Amityville, Copiague, and Lindenhurst stations are feasible.

37.    In July 2017, the LIRR announced a $5.6 billion modernization program, which it contended would consist of over 100 capital projects including 39 station upgrades, but none of this work included any plans to install elevators at the LIRR's Amityville, Copiague and Lindenhurst stations.

38.    On August 17, 2017, New York State Senator John Brooks, State Assemblymember Christine Pellegrino, and State Assemblymember Kimberly Jean-Pierre held a press conference at the Amityville station with many advocates from the disability community. The purpose of the press conference was to bring media attention to a letter that the legislators had written to the LIRR about the four consecutive Babylon line stations without elevator access: Massapequa Park, Amityville, Copiague and Lindenhurst.

39.    Indeed, despite Defendants' purported $5.6 billion modernization program, and Senator Brooks and Assemblymembers Pellegrino and Jean-Pierre's efforts, people with mobility disabilities still cannot access the LIRR's commuter rail services at the Amityville, Copiague, and Lindenhurst stations.

**B.    Failure to Make Bathrooms Accessible During Replacement of Escalators at Amityville, Copiague, and Lindenhurst LIRR Stations**

40.    At all relevant times, the bathrooms at the Amityville, Copiague, and Lindenhurst stations have not been readily accessible to and usable by people with mobility disabilities in violation of 49 CFR § 37.43(a)(1).

41. The replacement of the escalators at the Amityville, Copiague, and Lindenhurst stations affects or could affect the usability of each respective station.

42. During the time Defendants replaced the escalators at the Amityville, Copiague, and Lindenhurst stations, they failed to make the bathrooms at each respective station accessible to the maximum extent feasible in violation of 49 CFR § 37.43(a)(2).

43. Because of the existence of a series of architectural barriers, the individual Plaintiffs are unable to enter or use the public bathrooms located at the Amityville, Copiague, and Lindenhurst stations.

44. Subsequent to the individual Plaintiffs' visits to the Amityville, Copiague, and Lindenhurst stations, an inspection of the Men's and Women's bathrooms was conducted. Plaintiffs are aware of the inaccessible features of the bathrooms located at the Amityville, Copiague, and Lindenhurst stations.

45. Features of the restrooms at the Amityville, Copiague, and Lindenhurst stations that are inaccessible to the individual Plaintiffs, and others similarly situated, include but are not limited to doors that are too narrow and too heavy, insufficient toilet clearance space, sinks and lavatories with insufficient knee space, and an absence of grab bars.

46. The removal of existing architectural barriers in the Men's and Women's bathrooms located at the Amityville, Copiague, and Lindenhurst stations is feasible.

47. To date, Defendants have failed to remove the architectural barriers in the Men's and Women's bathrooms located at the Amityville, Copiague, and Lindenhurst stations.

## C.    Harm to Plaintiff SILO and its Constituents

48. The mission of SILO is to enable people with disabilities of Suffolk County and Long Island, New York, to gain effective control and direction of their lives.  SILO advocates for and promotes a growing sense of personal dignity and responsible community participation

8

through training, community development, and direct services responsive to the needs of the

people with disabilities it serves.

49.    In furtherance of its mission, SILO partners with numerous governmental and

non-governmental agencies to provide independent living services to people with disabilities,

including advocacy, assistive technology classes, community outreach, employment readiness

and support services, housing assistance, peer counseling, support groups, educational programs,

travel training, voter registration, and accessibility evaluations, among other things.

50.    SILO has expended substantial time and resources on advocacy work concerning

the accessibility of the LIRR, including the Amityville, Copiague, and Lindenhurst stations.

51.    Because the Amityville, Copiague, and Lindenhurst stations are inaccessible,

SILO staff must counsel individuals with mobility disabilities to rely on buses and paratransit

instead of the LIRR to travel, especially to New York City.  Counseling these individuals to

avoid the central method of transportation available from southern Suffolk County to New York

City, which is readily available to nondisabled individuals, frustrates SILO's mission of ensuring

equal opportunities for people with disabilities.

52.    SILO has expended staff time and other resources to investigate, respond to, and

advocate for constituents who are unable to access the LIRR at the Amityville, Copiague, and

Lindenhurst stations, all of which has diverted resources away from other SILO activities.  This

injury to SILO is ongoing and would be directly redressed by injunctive relief.

53.    In addition, SILO serves about 7,000 participants in its various programs per year.

These participants include individuals with disabilities who are deterred from using the

Amityville, Copiague, and Lindenhurst stations because they do not have any elevators and

because other amenities like the ticket machines and bathrooms at the stations remain

inaccessible.  Thus, one or more of SILO's participants have been injured as a direct result of the MTA and LIRR's discriminatory actions, and failures to act, and would have standing to sue in their own right.

54.     SILO can bring this action on behalf of itself and its participants because the interests at stake are germane to SILO's purpose.  Plaintiffs' claims are limited to injunctive relief which do not require the participation of individual constituents in the lawsuit.

**D.     <u>Harm to Plaintiff Harewood</u>**

55.     Mr. Harewood lives in North Amityville, New York.  If the Amityville LIRR station were accessible, it would be the closest accessible LIRR station to his home.

56.     Mr. Harewood is a participant of SILO, in that he has coordinated with SILO on advocacy projects relating to the accessibility of the LIRR, including participation in a press conference with SILO in June 2018.

57.     On one occasion in approximately 2010 or 2011, Mr. Harewood rode the LIRR to the Amityville station, not realizing that it did not have an elevator.  With difficulty, he was able to walk down the stairs; however, he had to press four men into carrying his motorized scooter down the stairs for him.  This situation was unsafe for Mr. Harewood, and also caused him embarrassment and distress in having to rely upon the kindness of strangers.

58.     On another occasion in approximately 2017, Mr. Harewood rode the LIRR to the Massapequa station, which has an elevator, but it was out of service.  Consequently, Mr. Harewood waited for the next train to take him to the Amityville station.  Upon arriving there, Mr. Harewood had no other choice but to attempt to exit the elevated platform by stepping backward down the staircase and leaving his scooter unattended on the platform.  Because Mr. Harewood's physical condition had significantly deteriorated since 2010, each step caused excruciating pain throughout his spine and hip.  Fortunately, another passenger also exiting the

platform offered to assist Mr. Harewood down the staircase by physically supporting Mr. Harewood's body with their own, while Mr. Harewood gripped the handrail for support. Afterwards, he called 911 and eventually firefighters carried his motorized scooter down the stairs for him.

59.     Mr. Harewood travels into Manhattan periodically to attend theater productions and visit museums, as well as other sights of interest.  If the Amityville station had an elevator and other accessible amenities, Mr. Harewood would use the LIRR for this travel every few months.  Such a trip, if taken exclusively on the LIRR, would take approximately an hour and a half each way and would need to be planned only a few hours in advance.

60.     Instead, Mr. Harewood relies on a combination of bus service and paratransit to get to New York City.  This is time-intensive for Mr. Harewood because he must register and coordinate with the bus and paratransit systems of Suffolk County, Nassau County, and New York City to do so.  In addition, such a trip must be planned several days in advance because the paratransit systems of Suffolk and Nassau Counties and New York City all require at least 24 hours' advance notice.  The trip on this system has taken considerably more than two and a half hours.

E.     **Harm to Plaintiff Rodriguez**

61.     Mr. Rodriguez lives in Lindenhurst, New York.  If the Lindenhurst LIRR station were accessible, it would be the closest available station to his home.

62.     Mr. Rodriguez is a participant in SILO.  SILO has assisted him in the past with regard to public transit and educational opportunities.

63.     Mr. Rodriguez uses the LIRR to travel to Manhattan about once each year.  Since 2011, Mr. Rodriguez has repeatedly attempted to use the Lindenhurst, Amityville, and Copiague stations only to find that none of them had an elevator, and they were inaccessible to him.

11

64.     Because there is no elevator at the Lindenhurst station nearest to where he lives, Mr. Rodriguez must travel an additional three miles to the nearest accessible station in Babylon, New York, to board the LIRR.  Generally, this means he must rely upon family members or friends to drive him from his home in Lindenhurst to the Babylon station, and vice versa upon his return, rather than being able to perform this activity independently were the Lindenhurst station accessible to him.

65.     Because the Lindenhurst LIRR station has no elevator and lacks other accessibility amenities, Mr. Rodriguez cannot visit New York City as independently as can Lindenhurst residents without disabilities.

**F.     Harm to Plaintiff Barbara**

66.     Ms. Barbara lives in Wantagh, New York.  She is a frequent user of the LIRR to travel to New York City.

67.     Ms. Barbara is a participant in SILO, in that she has coordinated with SILO on advocacy projects relating to the accessibility of the LIRR, including participation in a working group on mass transit.

68.     Ms. Barbara lived in Lindenhurst, New York until 2000, and has friends and other connections in the area.  She has friends who live near the Lindenhurst station and visits restaurants and other businesses in Copiague throughout the year.  She has a doctor in Amityville.  She is only able to visit these places when someone is available to drive her.  She would visit these friends and businesses independently and more often if the Amityville, Copiague, and Lindenhurst stations were accessible to her.

**CLASS ACTION ALLEGATIONS**

69.     Pursuant to Federal Rule of Civil Procedure 23(b)(2), named Plaintiffs SILO, Raymond Harewood, David Rodriguez, and Gina Barbara bring this action for injunctive relief

on their own behalf, on behalf of the constituents of SILO, and on behalf of all persons similarly situated.

70.    The class that Plaintiffs seek to represent consists of all persons with mobility disabilities who cannot currently use the Amityville, Copiague, and Lindenhurst LIRR stations because of accessibility barriers at those stations, and who would use those stations if they were made accessible.

71.    The claims asserted herein are solely for injunctive relief for class members; damage claims are not included in this complaint.

72.    The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court.  According to the 2017 American Community Survey, 5,643 residents of Amityville, Copiague, and Lindenhurst combined have a mobility disability.

73.    There is a well-defined community of interest in the questions of law and fact involved affecting the persons to be represented in that they are all being denied access to the Amityville, Copiague, and Lindenhurst LIRR stations.

74.    Common questions of law and fact predominate, including, but not limited to, whether Defendants' failure to construct elevators at the Amityville, Copiague, and Lindenhurst LIRR stations while altering the stations in a manner that affects their usability violates federal disability rights laws.

75.    Plaintiffs are adequate class representatives because they, or the persons they serve, are directly impacted by Defendants' failure to provide access to the Amityville, Copiague, and Lindenhurst LIRR stations.  Plaintiffs' interests are not antagonistic to, or in conflict with, the interests of the class as a whole.

76.     The attorneys representing the class are highly trained, duly qualified, and very experienced in representing plaintiffs in civil rights class actions for injunctive relief.

77.     Plaintiffs' claims are typical of the claims of the class as a whole because Plaintiffs are similarly affected by Defendants' failure to make the Amityville, Copiague, and Lindenhurst LIRR stations accessible to persons with mobility disabilities during alterations to the stations.

78.     Defendants have acted and/or failed to act on grounds generally applicable to the class as a whole, thereby making final injunctive relief appropriate with respect to the class as a whole.

79.     References to Plaintiffs shall include each Plaintiff and each member of the class, unless otherwise indicated.

**FIRST CAUSE OF ACTION**
Violation of Title II of the Americans with Disabilities Act (Elevators)
(42 U.S.C. § 12131 *et seq.*)

80.     Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

81.     Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from participating in or otherwise benefiting from its programs, or otherwise discriminating against a person on the basis of disability:  "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

82.     The term "disability" includes physical and mental conditions that substantially limit one or more major life activities.  42 U.S.C. § 12102(1)(A).

14

83.     A "qualified individual with a disability" means an "individual with a disability

who, with or without reasonable modifications to rules, policies, or practices, the removal of

architectural, communication, or transportation barriers, or the provision of auxiliary aids and

services, meets the essential eligibility requirements for the receipt of services or the

participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

84.     The named Plaintiffs, the board members and constituents of organizational

Plaintiff SILO, and the class members are persons with disabilities within the meaning of the

statute in that they have conditions that substantially limit one or more major life activities, such

as walking.  They are also qualified in that they live in, work in, and/or travel within Suffolk

County, Nassau County, and New York City and thus are eligible to benefit from Defendants'

commuter rail program.

85.     A "public entity" includes state and local governments, their agencies, and their

instrumentalities.  42 U.S.C. § 12131(1).  The MTA and LIRR are public entities within the

meaning of 42 U.S.C. § 12131 and 49 C.F.R. § 37.3.

86.     The MTA and LIRR are commuter authorities as defined in 42 U.S.C. § 12161(1),

49 U.S.C. § 24102(2), and 49 C.F.R. § 37.3.

87.     The MTA and LIRR operate and offer commuter rail transportation via the LIRR

as defined in 42 U.S.C. § 12161(2) and 49 U.S.C. § 24102(3).

88.     The MTA and LIRR are responsible persons as defined in 42 U.S.C. § 12161(5).

89.     The LIRR stations located at Amityville, Lindenhurst and Copiague are stations

as that term is defined in 42 U.S.C. § 12161(6).

90.     When a commuter rail transportation system alters an existing station in a way

that could or does affect the usability of the station or part of the station, the failure to do so "in

such a manner that, to the maximum extent feasible, the altered portions of the station are readily

accessible to and usable by individuals with disabilities, including individuals who use

wheelchairs, upon completion of such alterations" is considered discrimination under Title II of

the ADA in violation of 42 U.S.C. § 12162(e)(2)(B)(i).

91.    When such alterations affect the usability of a station as a whole, the entire station

must be made accessible to the maximum extent feasible.

92.    Congress authorized the United States Department of Transportation to

promulgate regulations implementing the ADA's provisions concerning access to public

transportation.  42 U.S.C. § 12164.

93.    One of these regulations, codified at 49 C.F.R. § 37.43(a)(1), applies to alterations

of transit facilities "in a way that affects or could affect the usability of the facility or part of the

facility."

94.    Transit authorities supervising such alterations, such as the MTA and LIRR, must

"make the alterations . . . in such a manner, to the maximum extent feasible, that the altered

portions of the facility are readily accessible to and usable by individuals with disabilities,

including individuals who use wheelchairs, upon the completion of such alterations."  *Id.*

95.    The regulations further define an "alteration" to an existing transit facility as

including, but not limited to, "remodeling, renovation, rehabilitation, reconstruction, historic

restoration, changes or rearrangement in structural parts or elements, and changes or

rearrangement in the plan configuration of walls and full-height partitions."  49 C.F.R. § 37.3.

96.    The escalator replacement projects undertaken at the Amityville, Copiague, and

Lindenhurst LIRR stations in 2016 included "renovation," "rehabilitation," "reconstruction," and

"changes or rearrangement in structural parts or elements," and thus were "alterations" within the meaning of 49 C.F.R. § 37.3.

97.     The replacement of the escalators connecting the street and platforms at the Amityville, Copiague, and Lindenhurst LIRR stations during the 2016 escalator replacement projects are alterations that affect the usability of the stations pursuant to 49 C.F.R. § 37.43(a)(1).

98.     Defendants failed to install elevators at the Amityville, Copiague, and Lindenhurst LIRR stations when making alterations that affect the usability of the stations, including replacing escalators, in violation of Title II of the ADA.

99.     Defendants' conduct constitutes an ongoing and continuous violation of the ADA.

100.    Unless restrained from doing so, Defendants will continue to violate the law.

101.    Through their conduct, Defendants have caused and will continue to cause Plaintiffs immediate and irreparable injury.

102.    Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs. 42 U.S.C. § 12133; 29 U.S.C. 794(a)(2); 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
Violation of Title II of the Americans with Disabilities Act (Other Amenities)
(42 U.S.C. § 12131 *et seq.*)

103.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

104.    Another United States Department of Transportation regulation, codified at 49 C.F.R. § 37.43(a)(2) and explaining 42 U.S.C. § 12162(e)(2)(B)(ii), applies to alterations of transit facilities "that affect[] or could affect the usability of or access to an area of a facility containing a primary function."

105.    Transit authorities supervising such alterations, such as the MTA and LIRR, must "make the alteration in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon completion of the alterations," so long as "the cost and scope of doing so" are not "disproportionate."  49 C.F.R. § 37.43(a)(2).

106.    The replacement of the escalators connecting the street and platforms at the Amityville, Copiague, and Lindenhurst LIRR stations was an alteration that affected the usability of and access to an area of a facility containing a primary function of the station, namely the train platform, pursuant to 49 C.F.R. § 37.43(a)(2).

107.    When replacing the escalators at the Amityville, Copiague, and Lindenhurst LIRR stations, Defendants failed to ensure that the bathrooms, telephones, drinking fountains, and other amenities on the path of travel to the altered area were readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in violation of Title II of the ADA.

108.    Defendants' conduct constitutes an ongoing and continuous violation of the ADA.

109.    Unless restrained from doing so, Defendants will continue to violate the law.

110.    Through their conduct, Defendants have caused and will continue to cause Plaintiffs immediate and irreparable injury.

111.    Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs. 42 U.S.C. § 12133; 29 U.S.C. 794(a)(2); 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## THIRD CAUSE OF ACTION
Violation of Section 504 of the Rehabilitation Act of 1973 (Elevators)
(29 U.S.C. § 794 *et seq.*)

112.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

113.    Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

114.    Plaintiffs, board members and constituents of organizational Plaintiff SILO, and class members are otherwise qualified individuals with disabilities within the meaning of Section 504 in that they have impairments which substantially limit one or more major life activities, such as walking, and have reason to and are otherwise eligible to participate in Defendants' commuter rail program at the Amityville, Copiague, and Lindenhurst LIRR stations.  *See* 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102).

115.    Defendants MTA and LIRR are recipients of federal financial assistance within the meaning of Section 504 and have received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

116.    Defendants MTA and LIRR are instrumentalities of the New York State government.

117.    All of the operations of Defendants MTA and LIRR are "program[s] or activit[ies]" within the meaning of the Rehabilitation Act.  29 U.S.C. § 794(b)(1)(A).

118.    The term "discrimination" as defined by Section 504 includes the failure to alter

an existing station used in the provision of commuter rail transportation services "in such a

manner that, to the maximum extent feasible, the altered portions of the station are readily

accessible to and usable by individuals with disabilities, including individuals who use

wheelchairs, upon the completion of such alterations."  42 U.S.C. §12162(e)(2)(B)(i).

119.    The U.S. Department of Transportation regulations implementing Section 504

provide that "[n]o otherwise qualified person with a disability shall, solely by reason of his

disability, be excluded from participation in, be denied the benefits of, or otherwise be subjected

to discrimination under any program or activity that receives Federal financial assistance

administered by the Department of Transportation."  49 C.F.R. § 27.7(a).

120.    The prohibition on discrimination in the U.S. Department of Transportation

regulations applies to an "aid, benefit, or service provided under a program or activity receiving

Federal financial assistance," including "any aid, benefit, or service provided in or through a

facility that has been constructed, expanded, altered, leased or rented, or otherwise acquired, in

whole or in part, with Federal financial assistance."  49 C.F.R. § 27.7(b)(6).

121.    Defendants have discriminated against and continue to discriminate against

Plaintiffs by denying them the opportunity to participate in or benefit from the aids, benefits, or

services offered at the Amityville, Copiague, and Lindenhurst stations.  49 C.F.R. § 27.7(b)(1)(i).

122.    Under 49 C.F.R. § 37.21(b), Section 504 of the Rehabilitation Act requires that

Defendants comply with the requirements stated in 49 C.F.R. § 37.

123.    Transit authorities, such as the MTA and LIRR, supervising alterations that affect

or could affect the usability of transit facility in whole or in part must "make the alterations . . .

in such a manner, to the maximum extent feasible, that the altered portions of the facility are

20

readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations."  49 C.F.R. § 37.43(a)(1).

124.    The regulations further define an "alteration" to an existing transit facility as including, but not limited to, "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions."  49 C.F.R. § 37.3.

125.    The escalator replacement projects undertaken at the Amityville, Copiague, and Lindenhurst stations in approximately 2016 included "remodeling," "renovation," "rehabilitation," "reconstruction," and/or "changes or rearrangement in structural parts or elements," and thus were "alterations" within the meaning of 49 C.F.R. § 37.3.

126.    The replacement of escalators connecting the street and platforms at the Amityville, Copiague, and Lindenhurst stations during the 2016 escalator replacement projects are alterations that affect the usability of the stations pursuant to 49 C.F.R. § 37.43(a)(1).

127.    Defendants failed to install elevators at the Amityville, Copiague, and Lindenhurst stations when making alterations that affect the usability of the station, including replacing escalators, in violation of Section 504 of the Rehabilitation Act.

128.    Defendants and their agents and employees have violated and continue to violate Section 504 and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs to discrimination in the benefits and services of Defendants' commuter rail program at the Amityville, Copiague, and Lindenhurst stations solely by reason of their disabilities.

129.    Defendants' conduct constitutes an ongoing and continuous violation of Section 504 of the Rehabilitation Act.

130.    Unless restrained from doing so, Defendants will continue to violate the law.

131.    As a direct and proximate result of the aforementioned acts, Plaintiffs have been and continue to be injured.

132.    Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.  29 U.S.C. 794(a)(2); 42 U.S.C. § 2000e-5(k).

**FOURTH CAUSE OF ACTION**
Violation of Section 504 of the Rehabilitation Act of 1973 (Other Amenities)
(29 U.S.C. § 794 *et seq.*)

133.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

134.    Under 49 C.F.R. § 37.21(b), Section 504 of the Rehabilitation Act of 1973 requires that Defendants comply with the requirements stated in 49 C.F.R. § 37.

135.    Another United States Department of Transportation regulation, codified at 49 C.F.R. § 37.43(a)(2) and explaining 42 U.S.C. § 12162(e)(2)(B)(ii), applies to alterations of transit facilities "that affect[] or could affect the usability of or access to an area of a facility containing a primary function."

136.    Transit authorities supervising such alterations, such as the MTA and LIRR, must "make the alteration in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon completion of the alterations," so long as "the cost and scope of doing so" are not "disproportionate."  49 C.F.R. § 37.43(a)(2).

137.    The replacement of the escalators connecting the street and platforms at the Amityville, Copiague, and Lindenhurst LIRR stations was an alteration that affected the usability

of and access to an area of a facility containing a primary function of the station, namely the train

platform, pursuant to 49 C.F.R. § 37.43(a)(2).

138.    When replacing the escalators at the Amityville, Copiague, and Lindenhurst LIRR

stations, Defendants failed to ensure that the bathrooms, telephones, drinking fountains, and

other amenities on the path of travel to the altered area were readily accessible to and usable by

individuals with disabilities, including individuals who use wheelchairs, in violation of Section

504 of the Rehabilitation Act.

139.    Defendants' conduct constitutes an ongoing and continuous violation of Section

504 of the Rehabilitation Act.

140.    Unless restrained from doing so, Defendants will continue to violate the law.

141.    Through their conduct, Defendants have caused and will continue to cause

Plaintiffs immediate and irreparable injury.

142.    Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

29 U.S.C. 794(a)(2); 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on their own behalf and on behalf of the class, pray for the

following relief against Defendants:

143.    That this matter be certified as a class action with the class defined as set forth

above, that Plaintiffs be appointed class representatives, and that their attorneys be appointed

class counsel;

144.    For an order and judgment enjoining Defendants from violating the Americans

with Disabilities Act and Section 504 of the Rehabilitation Act, and requiring Defendants to

make the Amityville, Copiague, and Lindenhurst stations accessible to persons with mobility disabilities;

145.    For an order and judgment declaring that Defendants' acts and omissions as challenged herein are unlawful;

146.    For an award of Plaintiffs' reasonable attorneys' fees and costs; and

147.    For such other relief that the Court may deem just and proper.

Dated:  April 23, 2019          Respectfully submitted,
            New York, New York

_____

Michelle Caiola (MC2110)
Christina Brandt-Young (CB6144)
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel:  (212) 644-8644
Fax:  (212) 644-8636
mcaiola@dralegal.org
cbrandt-young@dralegal.org

James E. Bahamonde
Law Offices of JAMES E. BAHAMONDE, P.C.
(JB6708)
2501 Jody Court
North Bellmore, NY 11710
Long Island Tel. (516) 783-9662
New York City Tel. (646) 290-8258
Fax No. (646) 435-4376
James@CivilRightsNY.com

*Attorneys for Plaintiffs*