UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

SELF INITIATED LIVING OPTIONS, INC et al

                   Plaintiffs,

      -against-

METROPOLITAN TRANSPORTATION
AUTHORITY et al,

                   Defendants.

--------------------------------------------------------------X
KATHARINE H. PARKER, United States Magistrate Judge

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/10/2020**

<u>ORDER OF DISCONTINUANCE</u>
19 Civ. 3564 (KHP)

       On May 12, 2020, an order was issued on the parties' consent agreeing to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).   (ECF No. 57.)   By letter dated May 15, 2020, the parties have reported to the Court that they have reached a settlement of this matter.   (ECF No. 58.)   By filing dated June 16, 2020, the parties reported to the Court the final terms of the settlement, and those terms are incorporated and attached to this Order. (ECF No. 59.)

       The Court has reviewed and approves the terms of the settlement and retains jurisdiction over this matter as set forth in the settlement agreement. According to the terms of the settlement, the Court will retain jurisdiction over this matter for one (1) year after all construction contemplated by the settlement agreement is complete and Evan Terry Associates ("ETA") has reviewed and approved all remediation work. This action is dismissed without prejudice subject to the Court's continuing jurisdiction to enforce the settlement and, if applicable, award attorneys' fees in accordance with the terms of the settlement agreement.

       If either party wishes to reinstate this matter, the party must make a letter application to the undersigned by no later than expiration of the one-year period referenced above. The parties shall file a status letter annually, every July 10, with the Court regarding the status of the reconstruction of the stations.

       The Clerk is requested to close the case.

       SO ORDERED.

Dated: July 10, 2020
New York, New York

                                _____
                                  KATHARINE H. PARKER
                                  United States Magistrate Judge

*ATTORNEY WORK PRODUCT*
*PRIVILEGED & CONFIDENTIAL*

## SETTLEMENT AGREEMENT

### I.      Introduction

1.      This Settlement Agreement ("**Agreement**") is entered into by Plaintiffs Self-Initiated Living Options, Gina Barbara, Raymond Harewood, and David Rodriguez (collectively referred to as "**Plaintiffs**") and Defendants Patrick Foye, in his official capacity as Chairman and Chief Executive Officer of the Metropolitan Transportation Authority, Phillip Eng, in his official capacity as President of The Long Island Rail Road Company, Metropolitan Transportation Authority and The Long Island Rail Road Company (collectively referred to as "**Defendants**" or Plaintiffs and Defendants both collectively referred to as the "**Parties**").

2.      Plaintiffs filed an action against Defendants in the Southern District of New York on April 23, 2019, styled as *Self-Initiated Living Options, Inc. et al. v. Metropolitan Transportation Authority et al.*, 1:19-cv-03564 (District Judge Gregory H. Woods), alleging disability discrimination in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act regarding the Amityville, Copiague, and Lindenhurst stations of The Long Island Rail Road Company ("LIRR") (each a "**Station**," and collectively, the "**Stations**").

3.      Plaintiffs allege, among other things, that in the course of performing various renovations at the Stations between 2012 and 2017, Defendants failed to install an elevator at each Station, and also failed to make amenities on the path of travel, including the bathroom, accessible at each Station as required by law.

4.      Defendants deny that they were legally obligated to make the Stations fully accessible at the time they performed the renovations at the Station, and also deny that they violated Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, or any other law or statute.

5.      Plaintiffs have retained Evan Terry Associates, LLC ("**ETA**") to perform physical barrier access surveys at the Stations, survey the accessibility of bathrooms and other amenities along the paths of travel at the Stations, and review drawings and plans for renovations and new construction at the Stations for compliance with applicable accessibility laws. The Parties agree to jointly retain ETA for continued long-term work in connection with the Stations, with fees to be paid directly by Defendants.

6.      The Parties now wish to effectuate a complete resolution of all claims, disputes, and controversies relating to Plaintiffs' allegations against Defendants, and to resolve the litigation as follows.

### II.     Definitions

**Access, Accessibility,** and **Accessible** mean and refer to conditions that comply with the relevant and applicable standards set forth in federal and state disability rights laws, including the Americans with Disabilities Act as codified at 42 U.S.C. § 12101 *et seq.*; the ADA Standards for Accessible Design, commonly referred to as the Americans with Disabilities Act Access

Guidelines, as codified at Appendix A to 28 C.F.R. Part 36; the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.*; and the New York State building code (collectively, **Accessibility Standards**).

**Effective Date** means the date this Agreement is signed by all Parties.

**Long Term Remediations Completion Date** shall mean June 30, 2023,[1] the date by which the Parties agree that Defendants shall use their best efforts to complete all the remediation work provided for in Schedule A to this Agreement, as well as installation of elevators and corresponding electrical service upgrades, and full elevator access at each of the Stations.

**Near Term Remediations Completion Date** shall mean September 30, 2021, the latest date by which Parties agree that Defendants shall use their best efforts to complete the remediation work detailed in Schedule A, attached hereto, which relate to bathrooms, curb ramps, and other work labeled 'NT.'

**Stations** means and refers to, collectively, the LIRR's Amityville, Copiague, and Lindenhurst stations of The Long Island Rail Road.

**Term of this Agreement** means and refers to the time from the Effective Date to the date on which the parties and Evan Terry Associates agree that the last construction project has been completed and all accessibility barriers at the Stations have been remediated.

**III.    Design and Construction of Accessible Features at the Stations**

    **A.    Amenities Along the Paths of Travel at the Stations**

        1.    Defendants agree to remedy alleged violations of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the applicable regulations thereunder (collectively, "applicable access laws") in all bathrooms and other amenities along the paths of travel at each pursuant to the schedules for completion set forth in Attachment A.

        2.    ETA will examine all bathrooms and other amenities along the paths of travel at each Station within ten (10) days of completion of work thereto, to ensure that the surveys and Defendants' resulting remediation have been performed in compliance with all

---

[1] Defendants will use their best efforts to meet all deadlines and completion dates set forth in this agreement. However, due to the uncertainty resulting from the COVID-19 pandemic, which has already led to a 60 day hold on all awards to contractors by MTA and its agencies, as of the date of this Agreement, Defendants do not know if they will have available employees and/or contractors to meet the deadlines set forth herein, nor do Defendants know if they will have funding issues that will impact Defendants' ability to fulfill their obligations under this Agreement. Should Defendants become unable to meet any deadline or completion date set forth herein due to COVID-19 related issues, they shall provide notice to Plaintiffs as set forth in Section III.E of this Agreement.

applicable access laws.  ETA will submit a report of its findings to the Parties within fifteen (15) days of completion of remediation at each Station.

       3.     If ETA identifies any violation of the applicable access laws in the surveys or completed remediation at each Station, Defendants agree to remedy the problems within two weeks.  ETA will examine the work within one week thereafter; and submit a report of its findings to all parties within another week.  The process set forth in this Section will repeat until ETA confirms that all accessibility barriers along the paths of travel at the Stations are eliminated.  ETA will attempt to limit travel costs when conducting such examination and shall, when possible as determined by ETA in its professional judgment, examine photos and other documents in lieu of travel.

**B.**    **Elevators**

       1.     Defendants agree to install elevators, make corresponding electrical service upgrades, and provide fully accessible elevator access at each of the Stations.

       2.     The installation of accessible elevators at each of the Stations, as well as other stations, is expected to be combined to comprise a single design-build project involving elevator installations at multiple locations.

       3.     Defendants shall use their best efforts to complete all of the elevator installations on the same timeline, but at the very least, the elevator installations at the Stations will be the first to be prioritized in the design-build project.

       4.     While Defendants are not intending to replace the platforms at the Stations as part of the elevator installation project, in order to make the elevators fully accessible, Defendants expect to pierce the existing platforms at each of the Stations when elevators are installed at each Station where platforms require such construction in order to be fully accessible.

       5.     ETA will examine the elevators at each Station within ten (10) days of completion to ensure that Defendants' installation of elevators have been performed in compliance with all applicable access laws.  ETA will submit a report of its findings to the Parties within fifteen (15) days of completion of the remediations.

       6.     If ETA identifies any violation of the applicable access laws in the surveys or completed remediations, Defendants agree to remedy the problems within two weeks.  If necessary, ETA will examine the work within one week thereafter and will submit a report of its findings to all parties within another week.  The process set forth in this Section will repeat until ETA confirms that all accessibility barriers in connection with the elevators and along the paths of travel at the Stations are eliminated.  ETA will attempt to limit travel costs when conducting such examinations and shall, when possible as determined by ETA in its professional judgment, examine photos and other documents in lieu of travel.

**C.      Parking, Exterior Route of Travel, Waiting Rooms, and Bathrooms**

1.      Defendants agree to make fully accessible and remediate all access barriers at the Stations, including all parking lots and spaces owned by LIRR, exterior routes of travel, waiting rooms, and bathrooms.

2.      Defendants agree to remediate all parking lots owned by LIRR and make them fully accessible, including by, among other things, modifying the overall accessible route to the Station and relocation of parking spaces.

3.      Defendants agree to use their best efforts to work with the owners of any parking lots and spaces not owned by LIRR to make fully accessible and remediate all access barriers at the Stations, including all parking lots and spaces, exterior routes of travel, waiting rooms, and bathrooms, including by, among other things, modifying the overall accessible route to the Station and relocation of parking spaces.

4.      Defendants agree to ensure that all exterior routes of travel are fully accessible, including, by, among other things, adding or repairing deficient curb ramps to create accessible routes to the Stations in areas proximate to each Station, and adding or repairing deficient curb ramps to create accessible routes to the stations in all remaining areas, installing or repairing escalator ramps and addressing path of travel concerns present at each of the subject stations.

5.      Defendants agree to remediate all access barriers in waiting rooms located at each of the Stations by, among other things, making interim repairs to entry doors to meet ADA compliant threshold heights, closing speeds, and electronic release heights, making permanent replacements of building doors, and adjusting vision panel and ticket counter heights.

6.      Defendants agree to reconstruct two bathrooms at each of the Stations to achieve full ADA compliance, including by, among other things, creating bathrooms with proper door-clear widths, proper door maneuvering clearance, threshold and door hardware heights, door speed and force required to open doors, ADA complaint braille signage, wheelchair accessible compartments, and the installation of grab bars in both toilet rooms.

7.      The remediation of all access barriers at the subject stations as described in this Section, and as more fully detailed in Schedule A hereto, shall be completed pursuant to the completion schedules set forth below.

**D.      Timing and Standards for Design and Construction of Accessible Features**

1.      **Installation of Elevators and Other Long Term Remediations in Connection with Parking Lots, Certain Work Related to Exterior Routes of Travel, Escalator Ramps and Interior Paths of Travel, and Certain Remediations in Waiting Rooms**

a.      Remediations that Defendants must complete in the long term, by at the latest, June 30, 2023 ("Long Term Remediations Completion Date") are those itemized in

4

Schedule A attached hereto (list of required remediations, detailed per Station), including the following:

b.     As part of the long term remediations contemplated by this Agreement, Defendants agree to install elevators at all Stations, make corresponding electrical service upgrades and to make the following additional long term remediations as applicable at each of the Stations (as set forth in detail in Schedule A): (1) remediation of Parking Lots owned by LIRR and any related necessary modification of the overall accessible route to the Stations and relocation of parking spaces; (2) remediation of exterior routes of travel by adding or repairing deficient curb ramps to create accessible routes to the stations all areas, in addition to those that are proximate to the Stations; (3) installing or repairing escalator ramps and addressing path of travel concerns present at each of the subject stations; (4) making permanent replacements of building doors, vision panel and ticket counter heights in all waiting rooms; (5) making platform surface modifications to address identified ADA compliance issues; and (6) making modifications to signage at the street and platform level.

c.     Defendant shall select a design consultant for installation of elevators and alterations of the bathrooms and other amenities along the path of travel at all Stations by March 30, 2021, and the designs for such work shall be completed by July 31, 2021.

d.     Starting on August 1, 2021, following selection of the design consultant, ETA will review the completed preliminary design work to ensure that Defendants' design consultant's preliminary designs are in compliance with all applicable access laws. ETA will submit a report of its findings to the Parties within fifteen (15) days of Defendants' providing preliminary designs for review.

e.     Defendants shall execute the procurement contract in connection with the design-build construction and related services in connection with the work to be done on the Stations by December 30, 2021.

f.     Following selection of the design-build contractor by Defendants, ETA will review the completed design work to ensure that the contractor's designs are in compliance with all applicable access laws. ETA will submit a report of its findings to the Parties within fifteen (15) days of Defendants' providing the design for review.

g.     Defendants agree to use their best efforts to ensure that the long term remediations set forth in this Section, and all station work pursuant to this Agreement, shall be complete at all of the Stations by June 30, 2023 ("Long Term Remediations Completion Date").

2.     **Near Term Remediations: Bathrooms, Interim Repairs to Entry Doors, and Remediations to Provide Accessible Route to Stations**

a.     Remediations that Defendants must complete in the near term, by, at the latest, September 30, 2021 ("Near Term Remediations Completion Date"), and with certain required interim completion dates before the Near Term Remediations Completion Date as set forth below, are those itemized in Schedule A attached hereto (list of required remediations, detailed per Station), including the following:

5

b.      Reconstruction of bathrooms to achieve full ADA compliance. Construction in connection with the bathrooms shall begin on August 1, 2020, and each Station shall have at least one ADA compliant gender-neutral restroom by February 16, 2021. The second restroom at each Station shall be complete by September 30, 2021.

c.      Addition of, or repair to deficient curb ramps to create accessible routes to the Stations in areas proximate to station shall be completed by February 16, 2021.

d.      Remediation of access barriers at waiting rooms for each of the Stations, by making interim repairs to entry doors to meet ADA compliant threshold heights, closing speeds, and electronic release heights shall be completed as soon as practicable and no later than August 21, 2021.

**E.**      **Applicable Standards for Design and Construction of Accessible Features**

1.      Notwithstanding Defendants' obligations to meet all deadlines and completion dates detailed herein, should Defendants become unable to meet a deadline or completion date despite its best efforts, Defendants must provide notice to Plaintiffs in advance and as soon as practicable, or as soon as Defendants learn of the change in circumstances that will impact their ability to fulfill its obligations under the agreement, whichever is earlier, and provide Plaintiffs with an explanation in writing as to the reasons for the delay and the steps Defendants will take to minimize the delay to the fullest extent possible.

2.      ETA will examine all construction work performed at each Station within seven days of completion at each Station to ensure the construction has been done in compliance with the applicable access laws. ETA will submit a report of its findings to all parties within 10 days of completion of its examination.

3.      If ETA identifies any violation of the applicable access laws in the construction work, Defendants will remedy the problems within two weeks. If necessary, the third-party expert will examine the work within one week thereafter; and the third-party expert will submit a report of its findings to all parties within another week. The process set forth in this Section will repeat until ETA confirms that all accessibility barriers at the Stations are eliminated. ETA will attempt to limit travel costs when conducting such examinations and shall, when possible as determined by ETA's professional judgment, examine photos and other documents in lieu of travel.

4.      No Station or portion of any Station that has been closed to the public for construction work pursuant to this Agreement shall reopen to the public until ETA has certified that the work has been done in compliance with the applicable access laws.

5.      All design, remediation, installation, and construction work performed pursuant to this Agreement shall be performed in a manner fully compliant with applicable provisions of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and their related regulations.

6.      All contracts that Defendants enter into for design, remediation, installation, and construction work pursuant to this Agreement shall specify that such work shall

be performed in a manner fully compliant with applicable provisions of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and their related regulations.

### F.   Maintenance of Accessible Features

1.      After completion of any and all work done in connection with accessible features at the Stations, Defendants and their contractors shall maintain those accessible features in operable working condition in accordance with 28 CFR § 35.133.

### G.   Reporting

1.      Defendants shall update counsel for Plaintiffs in writing every six (6) months as to their progress under this Agreement, which letter shall include:

(a) Progress toward each of the benchmarks listed in Section 2;

(b) If any benchmark has not been met, the reasons for failure to meet the benchmark, when Defendants expect that the benchmark will be met, and what steps Defendants are taking to accomplish that goal;

(c) After construction begins at any Station, Defendant shall provide reports on a quarterly basis on construction status, including any delays or problems, and anticipated ways of responding to and correcting them.

2.      Plaintiffs' Counsel shall be copied on all correspondence between Defendants and ETA. Both parties may speak privately with ETA.

### H.   Dispute Resolution

1.      Any disputes arising from this Agreement shall be resolved according to the following procedure:

a.      Notification in Writing: Counsel for each Party shall notify counsel for the other Party in writing of any perceived non-compliance by either Party.

b.      Meet and Confer: Unless otherwise agreed to by the Parties, with respect to any particular dispute, the Parties agree to meet and confer in good faith, within ten (10) business days after a written notification of a dispute is raised by either Party to discuss and try to resolve such dispute.

2.      Motion to Enforce: If the dispute is not resolved after sixty (60) days of meet and confer efforts between the Parties, any Party may file a motion with the Court to enforce the settlement. Attorneys' fees and costs in connection with any motion to enforce the terms of the settlement may be claimed in accordance with applicable law.

7

**I.      Dismissal and Continuing Jurisdiction**

1.      The Parties hereby agree to enter into a Stipulation of Dismissal of the lawsuit, in accordance with Federal Rule of Civil Procedure 41(a)(1)(A)(ii), within five (5) days of the signing of the Agreement by all Parties.  Plaintiffs shall file the stipulation with the Court immediately after.

2.      The Stipulation of Dismissal shall be without prejudice, subject to the District Court's retention of jurisdiction as described in Section I(4) of this Agreement.  Once all of Defendants' responsibilities and obligations as set forth herein have been completed, and have been reviewed and approved by ETA, the parties shall file a stipulation of dismissal with prejudice.

3.      The U.S. District Court for the Southern District of New York shall have continuing jurisdiction to enforce the Agreement until one (1) year after all construction contemplated by the Agreement is complete and ETA has reviewed and approved all remediation work.

4.      The District Court shall retain jurisdiction over this matter to enforce this Agreement as provided above and for determination and award of attorneys' fees and costs, if necessary.

5.      The Agreement shall, for all purposes, be governed by, construed, and enforced in accordance with federal law.

**J.      Expert Fees and Costs**

1.      The Parties agree to jointly retain ETA for continued long-term work in connection with the Stations, with reasonable fees to be paid directly by Defendants.  ETA will submit monthly invoices for payment for services rendered to Defendants, and send copies of the invoices to Plaintiffs, containing all documentation as required by Defendants.

**K.      Attorneys' Fees and Costs**

1.      Upon the execution of this agreement, the Parties agree to confer in good faith as to the reasonable attorneys' fees and costs relating to the litigation to which Plaintiffs' counsel is entitled to be reimbursed by Defendants.  If agreement has not been reached within 90 days of Plaintiffs' counsel submitting the time records to support their claim for fees and costs, the fee matter may, upon agreement of the Parties, be submitted to a mutually agreeable private mediator.  If the parties still cannot reach an agreement, Plaintiffs can thereafter apply to the District Court for determination and award of attorneys' fees and costs pursuant to 42 § U.S.C. 12205.

**L.      Entire Agreement**

1.      This Agreement contains all the agreements, conditions, promises, and covenants among Plaintiffs and Defendants regarding matters set forth in it.  No representations, warranties, or promises have been made or relied upon by any party hereto, other than those

contained herein. It supersedes all prior or contemporaneous agreements, drafts, representations, or understandings, either written or oral, with respect to the subject matter of the present Agreement.

**M.      Amendment or Modification**

1.      The Agreement may be modified only by means of a superseding written agreement, signed by the Parties.

**N.      Release and Stipulation of Discontinuance**

1.      Plaintiffs each hereby irrevocably and unconditionally release, acquit and forever discharge Defendants and their respective officers, directors, trustees, managers, agents, employees, medical staff, faculty members, and representatives whether current or former, and Defendants current, former, or future parents, subsidiaries, members, and affiliates, from any and all manner of actions, proceedings, causes of action, claims, suits, debts, sums of money, accounts, contracts, controversies, agreements, promises, damages, judgments, claims, liabilities, terms, sanctions and demands, regarding the subject matter of the Lawsuit, Accessibility Standards, obligations towards people with disabilities, the Stations, and/or any other potential claims, whether known or unknown, that arose on or before the Effective Date of this Agreement; except, however, that Plaintiffs do not release any claim to enforce the terms of this Agreement. The parties intend this release to have the maximum effect permissible under applicable law and precedent.

**O.      Execution**

1.      The Agreement may be executed in counterparts. All such counterparts taken together shall be deemed to constitute one and the same Agreement.

2.      The Agreement shall become effective when signed by all Parties.

**P.      Communications to Plaintiffs and Defendants.**

1.      Unless otherwise indicated in the Agreement, all notices or communications required by this Agreement shall be in writing by email and certified mail addressed as follows, unless counsel for other Party notifies counsel for the other Party in writing of any change:

> a.      To Plaintiffs' Counsel:
>
> Christina Brandt-Young
> Disability Rights Advocates
> 655 Third Ave., 14th Floor
> New York, NY 10017

Law Offices of James E. Bahamonde, PC
2501 Jody Ct.
North Bellmore, NY 11710
james@civilrightsny.com

David J. Abrams
Anthony MacDonald Caputo
Deva Roberts
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019

b.    To Defendants' Counsel:

Brian K. Saltz
Assistant Deputy General Counsel
The Long Island Rail Road Company
Law Department - 1143
Jamaica, NY 11435
bsaltz@lirr.org

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]*

10

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last below written.

SELF-INITIATED LIVING OPTIONS

DATED: 05.19.2020                      By:    *Joseph M. Delgado*

                                        Name:    Joseph M. Delgado
                                        Title:    Chief Executive Officer


DATED:_____                By:    _____

                                        Name:    Gina Barbera


DATED:_____                By:    _____

                                        Name:    Raymond Harewood


DATED: 5/21/2020                       By:    _____

                                        Name:    David Rodriguez


METROPOLITAN TRANSPORTATION AUTHORITY


DATED:_____                By:    _____

                                        Name:    _____
                                        Title:    _____


DATED:_____                By:    _____

                                        Name:    Patrick Foye
                                        Title:    Chairman and Chief Executive Officer of the Metropolitan Transportation Authority

11

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last below written.

SELF-INITIATED LIVING OPTIONS

DATED:_____     By:    _____
                                      Name:    _____
                                      Title:    _____


DATED:_____     By:    _____
                                      Name:    Gina Barbera _____


DATED: 5/20/2020              By:    _____
                                      Name:    Raymond Harewood _____


DATED:_____     By:    _____
                                      Name:    David Rodriguez _____


METROPOLITAN TRANSPORTATION
AUTHORITY


DATED:_____     By:    _____
                                      Name:    _____
                                      Title:    _____


DATED:_____     By:    _____
                                      Name:    Patrick Foye _____
                                               Chairman and Chief Executive
                                               Officer of the Metropolitan
                                      Title:    Transportation Authority


11

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last below written.

SELF-INITIATED LIVING OPTIONS

DATED:_____     By:   _____

Name:   _____

Title:   _____

DATED: _May 20, 2020_____     By:   _Gina Barbara_____

Name:   Gina Barbara

DATED:_____     By:   _____

Name:   Raymond Harewood

DATED:_____     By:   _____

Name:   David Rodriguez

METROPOLITAN TRANSPORTATION AUTHORITY

DATED:_____     By:   _____

Name:   _____

Title:   _____

DATED:_____     By:   _____

Name:   Patrick Foye

Title:   Chairman and Chief Executive Officer of the Metropolitan Transportation Authority

11

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last below written.

SELF-INITIATED LIVING OPTIONS

DATED:_____     By:  _____
                                         Name:  _____
                                         Title:  _____


DATED:_____     By:  _____
                                         Name:  Gina Barbera


DATED:_____     By:  _____
                                         Name:  Raymond Harewood


DATED:_____     By:  _____
                                         Name:  David Rodriguez


METROPOLITAN TRANSPORTATION AUTHORITY

DATED:___June 2, 2020_____     By:  _____Thomas J Quigley_____
                                         Name:  Thomas J. Quigley
                                                General Counsel, MTA
                                         Title:  _____


DATED:_____     By:  _____
                                         Name:  Patrick Foye
                                                Chairman and Chief Executive
                                                Officer of the Metropolitan
                                         Title:  Transportation Authority

11

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last below written.

SELF-INITIATED LIVING OPTIONS

DATED:_____ By: _____

Name: _____
Title: _____

DATED:_____ By: _____

Name: Gina Barbera

DATED:_____ By: _____

Name: Raymond Harewood

DATED:_____ By: _____

Name: David Rodriguez

METROPOLITAN TRANSPORTATION AUTHORITY

DATED:_____ By: _____

Name: _____
Title: _____

DATED June 15, 2020 By: _____

Name: Patrick J. Foye

Title: Chairman and Chief Executive Officer of the Metropolitan Transportation Authority

11

THE LONG ISLAND RAIL ROAD COMPANY

DATED: _5/18/2020_          By: _____

Name: _Paige Graves_

Title: _Vice President - General Counsel_


DATED: _5/18/2020_          By: _____

Name: _Phillip Eng_

President of The Long Island Rail

Title: Road Company

Attorneys for Plaintiffs:

DATED: 5/22/2020                   By: _____
                                           Christina Brandt-Young
                                           Disability Rights Advocates
                                           655 Third Ave., 14th Floor
                                           New York, NY 10017

DATED: 5/20/2020                   By: _____
                                           James E. Bahamonde
                                           Law Offices of James E. Bahamonde, PC
                                           2501 Jody Ct.
                                           North Bellmore, NY 11710

DATED: 5/20/2020                   By: _____
                                           David J. Abrams
                                           Anthony MacDonald Caputo
                                           Deva Roberts
                                           Kasowitz Benson Torres LLP
                                           1633 Broadway
                                           New York, NY 10019

Attorneys for Defendants:

DATED: 6/3/20                     By: _____
                                           Brian K. Saltz
                                           Assistant Deputy General Counsel
                                           The Long Island Rail Road Company
                                           Law Department - 1143
                                           Jamaica, NY 11435

**SO ORDERED:**

Dated: July 10, 2020                  _____
                                           Hon. Katharine H. Parker
                                           Magistrate Judge
                                           U.S. District Court for the Southern District of
                                           New York

## SCHEDULE A

**I.   General Near Term and Long Term Remediations Contemplated by Agreement**

As agreed upon by the Parties in the accompanying Agreement, Defendants shall complete the below remediations in accordance with the completion dates set forth in the Agreement.  The below remediations reflect those recommended by ETA in its expert reports, as detailed in the Agreement, detailing its findings as to necessary remediations at each of the Stations.

**Near Term Remediations**

- Reconstruct restrooms at each Station to achieve ADA compliance - including proper toilet, grab bars, door, maneuvering clearance, sink, mirror, dispensers, hand dryer, signage, insulate lavatory pipes, and accessories at each station.
- Make interim repairs to entry doors at Station waiting rooms to meet proper threshold heights, closing speeds, electronic lock release button height adjustments.  (Note that permanent station building door replacements will be performed as part of the long term remediations.)
- Add or reconstruct curb ramps to the North and South at each Station to create accessible routes to the stations. (Note that this effort will only address areas proximate to the station and accessible route.  Remainder will be performed as part of the long term remediations.)

**Long Term Remediations**

- Advance Preliminary Design to Final Design
- Construct New Elevators
- Electrical Service Upgrades
- Platform surface modifications to address identified ADA Compliance issues (*i.e.*, Tactile Warning Strips, Expansion Joint Adjustments/Repairs)
- Platform Waiting Room Door Replacement
- Modifications to Signage (Street & Platform Level)
- Site Improvements to add/repair deficient curb ramps, escalator ramps, path of travel concerns
- Station Building ticket counter, door threshold, alteration of exit doors.
- ADA parking space modifications and additional spaces for compliance

**II.   Specific Near Term and Long Term Remediations Required at Each Station**

The below sections detail the required long term remediations that Defendants agree to make at each of the Stations, pursuant to the terms of the Agreement.  For purposes of this Schedule, the "**NT**" annotation shall mean near term and "**LT**" annotation shall mean long term.  The remediations set forth herein are subject to the Long Term Remediations Completion Date and Short Term Remediations Completion Date, as defined in the Agreement.  The below list is not meant to be a comprehensive list, and the Parties agree that additional agreed upon remediations are set forth in the ETA expert report and may arise as construction and remediations are underway.

**Amityville**

## SCHEDULE A

Parking
* The access aisles  are too narrow. **LT**
* The surface of the designated accessible spaces and access aisle exceed 2.08%. **LT**
* ISA signage is not provided for each designated accessible parking space. **LT**


Exterior Route
* Horizontal openings in the ground surfaces at the plaza level and platform level are too wide.  **LT** Plaza Level, **LT** Platform.
* Curb ramps (described on pages 16-19 of ETA's February Amityville report) have excessive slope. **NT** to Add or reconstruct curb ramps to create accessible routes to the stations.  This effort will only address areas proximate to the station and accessible route.  **LT** for other areas at street/plaza level.
* Curb ramps (described on pages 16-19 of ETA's February Amityville report) have vertical changes in level at the bottom of the curb ramp and are not at the same level with the sidewalk, gutter and/or street. **NT** to Add or reconstruct curb ramps to create accessible routes to the stations.  This effort will only address areas proximate to the station and accessible route.  **LT** for other areas at street/plaza level.
* The ramp to the escalator has slope that exceeds 8.33%. **LT**
* An accessible route is not provided to the boarding platform. **LT**
* Detectable warnings are not provided on boarding platform edges. **LT**
* Compliant signages that identifies the station and its entrances are missing.**.** **LT** Station Building and Platform
* The signage that states 'Amityville' is not identified with raised letter and braille signage. **NT** Station Building and Platform
* Verbal announcements are provided but the same information is not provided in a visual format in the plaza area and in the platform waiting room. **LT**

Waiting Rooms
* Push to exit buttons are mounted out of reach range. **NT**
* Raised letter and braille "Exit" signage is not provided. **LT** Station Building
* Doors close too quickly. **LT** Station Building, **LT** Platform Level Waiting Room
* Door maneuvering clearance is less than required. **LT** Platform Level Waiting Room
* Vision panels in doors are too high. **LT** Platform Level Waiting Room
* There are horizontal openings in the ground surface in the door maneuvering clearance area that are too wide. **LT** Station Building, **LT** Platform Level Waiting Room
* The ticket counter is too high. **LT** (Copiague and Lindenhurst Ticket Office permanently closed – TVM Available, Amityville Ticket Office open part time – TVM Available)
* Raised letter and braille signage does not identify the station or its entrances. **LT** Station Building and Platform

Toilet Rooms
* Door clear width is less than required. **NT**
* Door maneuvering clearance is limited. **NT**

## SCHEDULE A

\* Doors shall have a privacy latch at an accessible height. **NT**
\* Thresholds are too tall. **NT**
\* Door hardware is too high. **NT**
\* Doors close too quickly and require too much force to open. **NT**
\* Raised letter and braille signage is not provided. **NT**
\* A wheelchair accessible compartment is not provided in either toilet room. **NT**
\* Grab bars are not provided. **NT**
\* The urinal rim is too high. **NT**
\* The lavatory has insufficient knee and toe clearance. **NT**
\* Lavatory water supply and drain pipes are not insulated or protected. **NT**
\* Lavatory faucets require too much force to operate. **NT**
\* The mirror is too high. **NT**
\* Inaccessible toilet paper dispenser. **NT**
\* Doors shall have a privacy latch at an accessible height. **NT**
\* Verify that 18 inches of clearance will be provided on the pull side after each bathroom door opening is widened. **NT**

### Copiague

Parking
All parking related items.  **LT**.  (For all parking items, LIRR needs to evaluate responsible party and work with a designer for a **LT** solution.  This solution may include modification of the overall accessible route to the station including relocation of parking spaces.)
\* The surface of the designated accessible spaces and access aisle exceed 2.08%. **LT**
\* Built-up curb ramps in the access aisles cause excessive slope. **LT** Add or reconstruct curb ramps to create accessible routes to the stations.  This effort will only address areas proximate to the station and accessible route.  **LT** for other areas at street/plaza level.

Exterior Route
\* Horizontal openings in the ground surface at the plaza and platform levels are too wide.  **LT** for platform level and other areas at street/plaza level.
\* Curb ramps are not provided where the route crosses a curb. **NT** to Add or reconstruct curb ramps (described on page 19 of ETA's February Copiague report) to create accessible routes to the stations.  This effort will only address areas proximate to the station and accessible route.  **LT** for other areas at street/plaza level.
\* The ramp to the escalator has slope that exceeds 8.33%. **LT**
\* An accessible route is not provided to the boarding platform. **LT**
\* Detectable warnings are not provided on boarding platform edges. **LT**
\*The signage that states 'Copiague' is not identified with raised letter and braille signage. **LT** Platform
\* Compliant signages that identifies the station and its entrances are missing. **LT Platform**
\* Verbal announcements are provided but the same information is not provided in a visual format in the plaza area and in the platform waiting room. **LT**

## SCHEDULE A

Waiting Rooms
* Doors close too quickly. **LT** Station Building.  **LT** Platform Level Waiting Room
*Ground surface within the door maneuvering clearance area is  not level at the North and South doors. **LT** Platform Level Waiting Room
* Vision panels in doors are too high. **LT** Platform Level Waiting Room
* Raised letter and braille "Exit" signage is not provided. **LT** Station Building
*Thresholds at the North, South, and West doors are too tall. **LT**
* There are horizontal openings in the ground surface of the door maneuvering clearance area that are too wide. **NT** Station Building, **LT** Platform Level Waiting Room

Toilet Rooms
* Door clear width is less than required. **NT**
* Door maneuvering clearance is limited. **NT**
* Thresholds are too tall. **NT**
* Door hardware is too high. **NT**
* Doors close too quickly and require too much force to open. **NT**
* Raised letter and braille signage is not provided. **NT**
* A wheelchair accessible compartment is not provided nor are flush mechanisms in either toilet room. **NT**
* Grab bars are not provided. **NT**
* The urinal rim is too high. **NT**
* The lavatory has insufficient knee and toe clearance. **NT**
* Lavatory water supply and drain pipes are not insulated or protected. **NT**
* Lavatory faucets require too much force to operate. **NT**
* The mirror is too high. **NT**
* Inaccessible toilet paper dispenser. **NT**
* Doors shall have a privacy latch at an accessible height. **NT**
* Verify that 18 inches of clearance will be provided on the pull side after each bathroom door opening is widened. **NT**


## Lindenhurst

Parking
All parking related items.  **LT**.  (For all parking items, LIRR needs to evaluate responsible party and work with a designer for a **LT** solution.  This solution may include modification of the overall accessible route to the station including relocation of parking spaces.)
* The surface of the designated accessible spaces and access aisle exceed 2.08%. **LT**

Exterior Route
* An accessible route is not provided to the north parking lot. **LT** (For all parking items we will need to evaluate responsible party and work with a designer for a **LT** solution.  This solution may include modification of the overall accessible route to the station)
*Horizontal openings in the ground surfaces at the plaza and platform levels are too wide.  **LT** for plaza level along paths to station building.  **LT** for platform level and other areas at street/plaza level.

4

## SCHEDULE A

\* The accessible route to entrances has cross slope that exceeds 2.08%. **LT** (For all cross-slope items we will need to evaluate responsible party and work with a designer for a **LT** solution.  This solution may include modification of the overall accessible route to the station)
\* Cross slope of accessible exterior route (perpendicular to the direction of travel) exceeds 2.08%. **NT**
\* Curb ramps have excessive slope. **NT** to Add or reconstruct curb ramps (described on pages 17-18 of ETA's February Lindenhurst report and Defendants' March 17, 2020 diagram) to create accessible routes to the stations.  This effort will only address areas proximate to the station and accessible route.  **LT** for other areas at street/plaza level.
\* Curb ramps have vertical changes in level at the bottom of the curb ramp. **NT** to Add or reconstruct curb ramps (described on pages 17-18 of ETA's February Lindenhurst report and Defendants' March 17, 2020 diagram) to create accessible routes to the stations.  This effort will only address areas proximate to the station and accessible route.  **LT** for other areas at street/plaza level.
\* The ramp to the escalator has slope that exceeds 8.33%. **LT**
\* An accessible route is not provided to the boarding platform. **LT**
\* Detectable warnings are not provided on boarding platform edges. **LT**
\* Compliant signages that identifies the station and its entrances are missing.**. LT Platform**
\* The signage that states 'Lindenhurst' is not identified with raised letter and braille signage. **LT** Station Building and Platform
\* Verbal announcements are provided but the same information is not provided in a visual format in the plaza area and in the platform waiting room. **LT**

Waiting Rooms
\* Doors close too quickly. **NT** Station Building and Platform Level Waiting Room
\* Door maneuvering clearance is limited. **LT** Platform Level Waiting Room
\* Door thresholds are too high. **NT** Station Building
\* Vision panels in platform waiting doors are too high. **LT** Platform Level Waiting Room
\* Door maneuvering clearance is less than required. **LT** Platform Level Waiting Room
\* There are horizontal openings in the ground surface of the door maneuvering clearance  area that are too wide. **LT** Station Building, **LT** Platform Level Waiting Room
\*Ground surface of the door maneuvering clearance area are  not level at the North and South doors. **LT** Station Building
\* The ticket counter is too high. N/A (Copiague and Lindenhurst Ticket Office permanently closed – TVM Available, Amityville Ticket Office open part time – TVM Available)
\* Raised letter and braille "Exit" signage is not provided. **LT** Station Building
\* Compliant signages that identifies the station and its entrances are missing. **NT** Station Building and Platform

Toilet Rooms
\* Door clear width is less than required. **NT**
\* Door maneuvering clearance is limited. **NT**
\* Thresholds are too tall. **NT**
\* Door hardware is too high. **NT**
\* Doors close too quickly and require too much force to open. **NT**

## SCHEDULE A

*Existing signage is too high. **NT**
* Wheelchair accessible compartment and flush mechanisms are not provided in either toilet room. **NT**
* Grab bars are not provided. **NT**
* The urinal rim is too high. **NT**
* The lavatory has insufficient knee and toe clearance. **NT**
* Lavatory water supply and drainage pipes are not insulated or protected. **NT**
* Lavatory faucets require too much force to operate. **NT**
* The mirror is too high. **NT**
* Inaccessible toilet paper dispenser. **NT**
* Doors shall have a privacy latch at an accessible height. **NT**
* Verify that 18 inches of clearance will be provided on the pull side after each bathroom door opening is widened. **NT**